## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

INLET MARINA VILLAS CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

                                 CASE NO.:  6:17-CV-01337-PGB-DCI

vs.

UNITED SPECIALTY INSURANCE COMPANY
and INTERSTATE FIRE & CASUALTY
COMPANY,

    Defendants.

_____

### MOTION TO QUANTIFY ATTORNEY FEES AND COSTS

Plaintiff, Inlet Marina Villas Condominium Association, Inc., moves to quantify its fees and costs.  The Court already determined entitlement.  ECF 29.

### I.       The issues left for the Court's consideration

Counsel for Inlet Marina and Defendants conferred by telephone regarding Plaintiff's counsel's hourly rates, the total hours billed, the multiplier, and costs.  *See* ECF 29 at 2-3; *see also* M.D. Fla. Loc. R. 3.01(g).  The parties reached agreement about the reasonableness of hours expended by Plaintiff's attorneys except for Attorney Michael Duffy[1], and hourly rates of all

---

[1] Counsel for Plaintiff and counsel for Defendants spoke about the reasonableness of the hours expended in several telephonic conferences.  Counsel for Defendants previously indicated that Defendants objected to "about 50" of the total hours expended by the attorneys in this case.  In exercising billing judgment on this matter, Plaintiff informed counsel—on its own initiative—that as part of the good faith conference for Defendants that it was going to reduce the hours of Attorney Michael Duffy by 43 hours, Attorney Eric Dickey by 74 hours, and Attorney Ian Dankelman by 21.5 hours.  Plaintiff's counsel did this so that there was complete disclosure to the other side on its billing judgment, and that it was not negotiating a resolution of the reasonableness of hours expended when the other side might have imperfect information.  In a discussion on 4/12/19, however, counsel for the Defendants indicated that they were objecting to significantly more hours expended by Mr. Duffy—perhaps as many as 100.  Plaintiff does **not** ascribe or even intone ulterior motives or "gotcha" tactics to counsel for Defendants on this late change in position. However, the late change in position has somewhat frustrated the proof on the reasonableness of hours.  The Court is the ultimate arbiter of the reasonableness of hours, and Plaintiffs' counsel submits its fee records to the Court.  The lodestar calculations advanced by Plaintiff below reduce the hours by these attorneys as an exercise in billing judgment.

individuals other than 3 attorneys.  The issues remaining for consideration: (1) the hourly rates for

Attorneys Michael Duffy, Eric Dickey, and Ian Dankelman, (2) Attorney Duffy's reasonable hours

expended, (3) the multiplier, and (3) printing costs.

## II.      The lodestar analysis

The lodestar is calculated by multiplying the number of hours reasonably expended by a

reasonable hourly rate.  *Alicea v. Mallard*, 2018 WL 6928443, at \*5 (M.D. Fla. 2018)(R&R

adopted on Jan. 3, 2019)(Irick, J.).  A reasonable hourly rate is the prevailing market rate in the

relevant legal community for similar services by attorneys of reasonably comparable skills,

experience and reputation.  *Id*.  For hours reasonably expended, counsel must exercise proper

billing judgment and exclude excessive, redundant, or otherwise unnecessary hours.  *Id*.  The Court

is itself an expert on attorneys' fees and may consider *Johnson* factors if needed.  *Id*.

## III.     <u>Calculating the lodestar: the reasonable hourly rates of Attorneys Michael Duffy, Eric Dickey and Ian Dankelman</u>

Below, Inlet Marina discusses the qualifications of its attorneys, the reasonableness of

Attorney Duffy's expended hours, the opinion of its experts on reasonableness of costs, and the

factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

### A.  Attorney Michael Duffy

Attorney Michael Duffy has been a licensed attorney in Illinois since 1982.  *Duffy Affidavit*,

Exhibit 1, ¶ 1.  He graduated with Honors from the University of Notre Dame, and is a graduate

of Loyola University of Chicago School of Law.  *Id*., ¶ 2.  Over nearly forty years of practice, Mr.

Duffy has litigated in forty-four states and tried cases in multiple states in both federal and state

courts.  *Id*., ¶ 3.  He began his practice in the early 1980's at a nationally known insurance defense

firm, became a partner of that firm in 1986, and a firm director in 1996.  *Id*.  While there, he

---

Plaintiff notes that its submission here represents an 11% reduction in hours by Attorney Duffy, an 18% reduction by Attorney Dickey, and a 16% reduction by Attorney Dankelman.

obtained multiple defense verdicts on behalf of the auto and construction industries throughout the county.  *Id.*  He also obtained defense verdicts across the United States on cases involving construction defect, business and commercial disputes, coverage, and negligence, and several other defense verdicts for catastrophic personal injuries because of truck tire and wheel mounting explosions.  *Id.*

 In 2002, he became a named partner at Childress Duffy, LLC.  *Id.*, ¶ 4.  His former law firm was a nationally recognized plaintiff firm that specialized in the representation of underpaid and denied individual and corporate policyholders throughout the country.  *Id.*  He tried multiple cases on behalf of insureds across the country involving windstorm, hail, hurricane, fire, water and vandalism losses.  *Id.*  He obtained several multi-million-dollar verdicts for wronged insureds.  *Id.*  He was one of the first attorneys in the United States to develop property and injury mold litigation against insurance companies and other entities and worked on some of the first mold trials in the country.  *Id.*  He has been a speaker at the Florida Association of Public Insurance Adjusters, the National Association of Public Insurance Adjusters, and the Windstorm Conference.  *Id.*, ¶ 5.

Mr. Duffy was one of two lead trial attorneys in the binding arbitration.  *Id.*, ¶ 6.  In the heavily contested matter, he directed and cross-examined several expert witnesses and one lay witness.  *Id.*  He delivered the final argument summation.  *Id.*  Mr. Duffy's reasonable hourly rate is $550 per hour.

Here, Inlet Marina also addresses the reasonableness of hours expended by Mr. Duffy.  Originally, in a multi-million-dollar case, Mr. Duffy expended 393.50 hours of claimed time.  Plaintiffs reduce that figure by 43 hours here to take out travel time.  Defendants were right when they initially said "about 50 hours" should come off the Plaintiff's attorneys time sheets.  As detailed above, Plaintiffs' counsel exercised significant billing judgment and reduced that figure

significantly.  Inlet Marina respectfully submits that not another hour should come off the claimed time.

### B. Attorney Eric Dickey

Attorney Eric Dickey graduated *cum laude* from the Florida State University College of Law in 2001.  *Dickey Affidavit*, Exhibit 2, ¶ 3.  In law school, he was an executive board member of the trial team, represented the university in numerous state and national competitions, was recognized for pro bono service, and served as the Dean's research assistant.  *Id.*  He has tried over 50 jury trials and several hundred non-jury trials in both civil and criminal cases.  *Id.*, ¶ 4.  Before joining Merlin Law Group, P.A., he worked for several years at a leading property insurance defense firm, where he tried cases in both state and federal courts.  *Id.*  He has handled numerous first-party property claims throughout his career.  *Id.*  He previously owned his own law firm practicing civil litigation, including a significant practice of first-party property coverage.  *Id.*  He has published or collaborated on several works involving first-party property insurance claims.  *Id.*

With Mr. Duffy, he was one of two lead trial attorneys in the binding arbitration that took place in this matter.  *Id.*, ¶ 6.  He directed and cross-examined expert witnesses during the trial and delivered the first closing argument.  *Id.*  The Court should determine that Mr. Dickey's reasonable hourly rate is $450 per hour.

### C. Attorney Ian Dankelman

Attorney Ian Dankelman has been a member of the Florida Bar since September 2014.  *Dankelman Affidavit*, Exhibit 3, ¶ 1.  Mr. Dankelman graduated *cum laude* from the University of Florida Levin College of Law in 2014.  *Id.*, ¶ 3.  In law school, he earned book awards in Legal Research and Writing and Trial Practice.  *Id.*  He served as the internal vice president of the University of Florida moot court team and was named to the National Order of the Barristers.  *Id.*

At an internal university moot court competition, the Florida Supreme Court named him best oral advocate. *Id*.

After sitting for the Florida Bar, he began his legal career at the Office of the State Attorney for the Fourth Judicial Circuit in Florida. *Id.*, ¶ 4. He progressed to the felony line, where he investigated and prosecuted cases in which defendants were eligible for life imprisonment and habitual sentencing enhancements. *Id*. As a prosecutor, he tried sixteen cases to jury submission as either first-chair or second-chair. *Id*. He argued numerous motions to suppress and other pretrial motions before the court. *Id*.

From October 2016 to September 2018, Mr. Dankelman served as a law clerk to an active United States District Judge in the Tampa Division of the Middle District of Florida. *Id.*, ¶ 5. In that capacity, he assisted in drafting opinions, researching complex legal issues, and managing the progression of civil and criminal cases. *Id*. He also aided the judge during federal civil jury trials. *Id*. The Middle District of Florida is one of the busiest federal courts in the United States. *Id*.

Mr. Dankelman joined Merlin Law Group, P.A. in the September 2018 as an associate. *Id.*, ¶ 6. He worked as third-chair in the binding arbitration. *Id*. He helped prepare the matter for trial, drafted pre-trial submissions, aided in the presentation of the evidence (although he did not argue or handle witness testimony), helped pretrial witnesses, and assisted in the preparation of closing arguments. *Id.*, ¶ 7. The arbitration award found damages in the amount of $3,106,700 and rendered $2,509,912 in new moneys to the insured. *Id.*, ¶ 8.

The Court should determine that Mr. Dankelman's reasonable hourly rate is $350 per hour. Importantly, other associates involved with this case who claim a lower rate do not have as much experience as a lawyer, his trial experience, or experience with the federal courts.

## D.  Expert opinion of Attorney David Prather

Inlet Marina retained David C. Prather as its fee expert.  *Prather Affidavit*, Exhibit 4.  He is an

A.V. Preeminent-rated Board Certified Civil Trial Attorney and has practiced civil law in Florida

since 1995.  *Id*.  He has been a member in good standing with the Florida Bar since 1991.  *Id*.  He

is admitted to the United States Supreme Court, the Eleventh Circuit, and all federal courts in

Florida.  *Id*.  To formulate his opinion, he reviewed the underlying facts, pleadings, and other

relevant documents.  *Id*.  He reviewed and analyzed the prevailing market rate in the relevant

community for paralegals and lawyers in southern and central Florida to ascertain what the

reasonable hourly rates currently are for legal and paralegal professionals who perform similar

services as those performed in the instant matter.  *Id*. Mr. Prather's conclusions: $550 per hour for

Mr. Duffy; $450 per hour for Mr. Dickey; and $350 per hour for Mr. Dankelman.

## E.  The Johnson factors

As this Court recounted in *Mallard*, 2018 WL 6928443 n.2, the Johnson factors are:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to
> perform the legal services properly; 4) the preclusion of other employment by the attorney due to
> acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or
> contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and
> the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the
> "undesirability" of the case; 11) the nature and length of the professional relationship with the client;
> and 12) awards in similar cases.

Here, over 1,100 hours of attorney and staff time were necessary to prosecute this action to

completion.[2]  *Fee and Costs Records*, Exhibit 5 at 32.  The case required extensive discovery

practice and review of thousands of pages of expert documentation and deposition testimony.  The

questions here were difficult.  The matter required extraordinary attention to detailed expert

---

[2] As stated above, as an exercise in billing judgment, counsel reduced its billable hours as follows: Attorney Michael
Duffy by 43 hours, Attorney Eric Dickey by 74 hours, and Attorney Ian Dankelman by 21.5 hours.  These reductions
are already made in the lodestar calculation below. No other objections to other reasonable hours or rates are lodged
against the reasonableness of hours or the hourly rates of any other members of the Plaintiff's legal team other than
Attorneys Duffy, Dickey, and Dankelman.

testimony on damages to the roofs, stucco, glazing assemblies, calculation of damages, and the applicability of the Florida Building Code.

Presentation of expert testimony from Plaintiff's witnesses, and cross examination of Defendants' experts, required extraordinary skill to present the case succinctly and definitively to the arbitration panel. Counsel for Plaintiff took this case on a contingency fee basis. The arbitration panel awarded Inlet Marina $2,509,912 in new money and found that total damages exceeded $3.1 million. *Award*, Exhibit 7. The results were excellent. Before arbitration, Defendants declined to even mediate the case. Throughout the litigation, Defendants asserted that no new money was owed. The reputations of the attorneys in this case, especially those of Mr. Duffy and Mr. Dickey—both lead trial counsel—are exceptional. As detailed above, both Mr. Duffy and Mr. Dickey have significant experience in first-party property litigation.

In many ways, the case was undesirable. As detailed in the costs report, Plaintiff's law firm was required to hire numerous experts and front significant funds to litigate the case to conclusion. The cost of the arbitration itself was high based on its location, the expenses of travel, securing the conference room, and the time it took for recovery. Accordingly, the *Johnson* factors militate in favor of the claimed hourly rate by Mr. Duffy, Mr. Dickey, and Mr. Dankelman.

## IV.    Calculating the Lodestar

With the reasonableness of hours demonstrated, and the reasonable hourly rates of the attorneys set, the lodestar is $402,225. The calculations follow:

| Attorney | Hours Claimed | Hourly Rate | Total |
|---|---|---|---|
| Kelly Kubiak | 2.10 | $450 | $945 |
| Farana Bradley (paralegal) | 153.60 | $125 | $19,200 |
| Shane Smith | .70 | $450 | $315 |

7

| | | | |
|---|---|---|---|
| Donna Alvarez (Paralegal) | 4.80 | $125 | $600 |
| Michael Duffy | 350.5 | $550 | $192,775 |
| Edward Eshoo, Jr. | .1 | $500 | $50 |
| Melissa Reach (Paralegal) | 1.00 | $125 | $125 |
| Marie Laur | 2.10 | $275 | $577.50 |
| Vivian Castillo (Paralegal) | 2.80 | $125.00 | $350 |
| Chad Young (Law Clerk) | 2.90 | $125 | $362.50 |
| Eric Dickey | 328.1 | $450 | $147,645 |
| Lisa Liberher (Paralegal) | .90 | $125 | $112.50 |
| Ian Dankelman | 112.60 | $350 | $39,140 |
| Christina Potter | .10 | $275 | $27.50 |
| **TOTAL LODESTAR** | | | **$402,225.00** |

*See* Exhibit 5 at 32 (with reductions for time for Attorneys Duffy, Dickey, and Dankelman included in the chart above).

## V.    Fee Multiplier

Inlet Marina seeks a contingency fee multiplier in the amount of 1.50.  "When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee." *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 831 (Fla. 1990).  "Thus, a contingency fee multiplier, although not mandatory, must at least be considered by trial judges in contingency fee cases." *Harvard Farms, Inc. v. National Cas. Co.*, 617 So. 2d 400, 401 (Fla. 3d DCA 1993), *overruled on other grounds by Chandris, S.A. v. Yanakakis*, 668 So. 2d 180 (Fla. 1995).

The Eleventh Circuit recently explained the Florida standard for a contingency fee multiplier: (1) whether the relevant market requires a multiplier to obtain competent counsel, (2) whether the attorney was able to mitigate the risk of nonpayment in any way, and (3) whether other applicable factors, especially "the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client" support the award. *Houston Specialty Insurance Company v. Vaughn*, 749 Fed. App'x. 800, 803 (11th Cir. 2018)(unpublished)(affirming award of 2.0 multiplier issued by district court). Additional factors the Court must consider closely track the *Johnson* factors identified above. *Id*. at 804, n.2.

Here, Plaintiff's counsel was retained on a contingency fee agreement. *Contract*, Exhibit 6 at 1. Plaintiff's counsel would be unable to mitigate the risk of nonpayment in any way if Plaintiff did not prevail. *See id*. at 2 ("In the event that there is no recovery in connection with the above referenced matter, Clients do not owe a fee to lawyers."). The amount involved was significant—in the millions of dollars. The results were exceptional. From the outset, Defendants asserted that no new money was owed to the insured. Plaintiffs proved them wrong: over $2.5 million dollars in new damages were awarded. Indeed, in closing argument, Defendants argued that they paid more than the policy required. As recounted above, the case took significant time and labor to try, presented difficult issues, and required great skill to prevail.

Taken together, the factors demonstrate that a contingency fee multiplier of 1.5 is appropriate. Accordingly, applying the lodestar to the multiplier, the Court should issue a fee award in the amount of $603,337.50.

## VI.    Costs

Defendants have no objections to Inlet Marina's costs in the amount of $10,421.86. Defendants object to costs in the amount of $21,546.50 for fees and disbursements for printing. Plaintiff's fee sheet shows the printing costs associated with the case. Exhibit 5 at 32-55.

Important here, the arbitration took place in a hotel conference room.  All papers had to be transported to the conference room, and printed documents were necessary to prepare and try the case.  By agreement, Inlet Marina produced the entirety of the voluminous record evidence to the arbitration panel before the commencement of the proceedings.  Additionally, the arbitrators each requested binders of culled record evidence at the close of the arbitration.  These included deposition transcripts, reports, and bids.  The printing requirements were immense.  Here, the costs for printing are reasonable and should be awarded.[3] As the non-printing costs are lodged without objection from Defendants, the Court should award of $31,968.36 in costs to Inlet Marina.

## VII.    Conclusion

The breach of contract case has ended.  Plaintiff's counsel's requested hourly rates are reasonable, and Plaintiffs' counsel has exercised an abundance of billing judgment before quantifying its request to this Court.  The Court should award Plaintiff attorneys' fees in the amount of $603,337.50 and costs in the amount of $31,968.36.

### Local Rule 3.01(g) Certification

Counsel for Plaintiff and counsel for Defendant spoke several times on the telephone in a good faith resolution of this motion.  The agreements between counsel are set forth below:

1.      Defendants do not object to the reasonableness of hours of any of Plaintiff's attorneys or legal staff in this litigation except for Attorney Duffy.

2.      Defendants do not object to the reasonable hourly rates of any of Plaintiff's attorneys or legal staff except for Attorneys Ian Dankelman, Michael Duffy, and Eric Dickey.

---

[3] Based on the good faith telephonic conference with opposing counsel, it is Defendants' position that the only costs awardable in these proceedings are those delineated by 28 USC § 1920.

3.      Defendants do not object to the award of claimed costs, except for claimed

printing costs in the amount of $21,546.50.  Defendants' position is that the only costs awardable

in these proceedings are those delineated by 28 USC § 1920.

4.   Defendants object to the Court granting a contingency fee multiplier.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

electronically filed with the Clerk of Court by using the CM/ECF system this **12th day of April, 2019** which

will send a notice of electronic filing to all counsel of record registered with the CM/ECF system as

identified on the attached service list below.

MERLIN LAW GROUP, P.A.


 */s/ Eric W. Dickey* .
KELLY L. KUBIAK, ESQUIRE
Florida Bar No.  108952
ERIC W. DICKEY, ESQUIRE
Florida Bar No. 500011
777 South Harbour Island Blvd., Ste. 950
Tampa, FL  33602
Tel: (813) 229-1000/Fax: (813) 229-3692
Attorneys for Plaintiff
kubiakpleadings@merlinlawgroup.com
kkubiak@merlinlawgroup.com
edickey@merlinlawgroup.com

**<u>SERVICE LIST</u>**

**<u>Counsel for Defendant</u>**
Dennis M. Campbell, Esq.
Jared Dallau, Esq.
CAMPBELL LAW FIRM, PLLC
201 Alhambra Circle
Suite 602
Coral Gables, FL 33131
Telephone: (305) 444-4060
Facsimile: (305) 444-6041
dcampbell@campbelllawfirm.net
jdallau@campbelllawfirm.net
service@campbelllawfirm.net
Attorneys for Defendants